UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| HOWELL DEAN O'BRYAN, JR., <br><br> Petitioner, <br><br> v. <br><br> J.W. COX, in his capacity as Warden of Yankton Federal Prison Camp, <br><br> Respondent. | 4:21-cv-04052-LLP <br><br><br> **RESPONDENT'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS** |

Respondent, by and through counsel of record, hereby submits the following Reply to Petitioner's Second Brief in Opposition to Government's Motion to Dismiss. Docket 23. In his second response, O'Bryan glosses over basic rules of statutory construction in an attempt to persuade the Court that the First Step Act requires the application of earned time credits during the two-year phase-in period. O'Bryan also baldly reasserts that he is entitled to the application of 14 months of FSA earned time credits and immediate release from custody. As set forth in the Government's opening brief, and as discussed in further detail below, the underlying habeas petition should be dismissed for lack of subject matter jurisdiction and for failure to state a claim for which relief may be granted.

## ARGUMENT

### I.    The Court Lacks Subject Matter Jurisdiction over O'Bryan's § 2241 Petition.

O'Bryan's second response focuses largely on whether the First Step Act mandates the application of earned time credits during the two-year phase-in period. As discussed in further detail below, O'Bryan's meandering and unsupported arguments are insufficient to overcome the plain language of the First Step Act. Moreover, O'Bryan has failed to establish that this Court has

jurisdiction to review the Bureau's hypothetical determination related to whether it will apply O'Bryan's FSA earned time credits toward pre-release custody or placement onto supervised release. Accordingly, Respondent respectfully renews its request that the Court dismiss the underlying habeas petition for lack of subject matter jurisdiction.

> **A.      O'Bryan unnecessarily complicates the statutory interpretation of 18 U.S.C. § 3261(h)(4) by minimizing the import of plain language and overlooking indicia of meaning that support Congress's grant of discretion to the Bureau in deciding whether to apply earned time credits during the phase-in period.**

In an effort to persuade this Court that Congress intended to mandate the application of FSA earned time credits during the phase-in period, O'Bryan draws the Court's attention to a narrow subsection of the First Step Act, which states as follows:

> Beginning on the date of enactment of this subsection, the Bureau of Prisons may begin to expand any evidence-based recidivism reduction programs and productive activities that exist at a prison as of such date, and may offer to prisoners who successfully participate in such programs and activities the incentives and rewards described in subchapter D.

18 U.S.C. § 3621(h)(4). O'Bryan then suggests that the Court overlook basic rules of statutory interpretation and look beyond the plain language of § 3621(h)(4) to other, select indicia of meaning that loosely support O'Bryan's complicated and otherwise unsupported interpretation of § 3621(h)(4). Not only does O'Bryan's approach gloss over the incontrovertible fact that the subsection itself grants the Bureau discretion—or permission—to offer incentives and rewards to prisoners prior to the phase-in period set forth in § 3621(h)(2), but it also conveniently overlooks the more salient indicators of Congress's intent found within the First Step Act.

The plain language of 18 U.S.C. § 3621(h)(4) is where the Court's analysis must begin, and it is where the analysis ought to end. The most basic tenant of statutory interpretation is to "presume that [the] legislature says in a statute what it means and means in a statute what it says there." Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992). "[O]ur inquiry begins with the

2

statutory text, and ends there as well if the text is unambiguous." BedRoc Ltd., LLC v. United States, 541 U.S. 176, 183 (2004); see also United States v. Mickelson, 433 F.3d 1050, 1052 (8th Cir. 2006). "[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6 (2000) (citations omitted).

The primary definition of the word "may" is "to be permitted to." May, BLACK'S LAW DICTIONARY (11th ed. 2019). Generally, "may" is permissive whereas "shall" is mandatory. Braswell v. City of El Dorado, 187 F.3d 954, 958-59 (8th Cir. 1999). There is no question that Congress appreciated the functional difference between "may" and "shall" when drafting the First Step Act, as the statute is replete with mandates. In fact, the subsection at issue—§ 3621(h)—contains the word "shall" in every subpart except § 3621(h)(4), where Congress deliberately shifted course and inserted the word "may." The idea that this clear grant of discretion somehow rises to the level of a mandate or otherwise renders the statute ambiguous is entirely unsupported by the rules of statutory interpretation. See Jones v. Hendrix, No. 2:20-CV-00247-ERE, 2021 WL 2402196, at *3 (E.D. Ark. June 11, 2021) ("The Court cannot read the word 'may' in 18 U.S.C. § 3621(h)(4) to mean 'shall,' especially when the word 'shall' is used throughout the same subsection.").

O'Bryan's argument also runs contrary to the conclusion reached by the overwhelming majority of courts to have considered this issue, including the District of South Dakota, which have repeatedly concluded that the plain language of 18 U.S.C. § 3621(h)(4) does not require implementation during the two-year phase-in period. See Docket 18 at p. 6 (agreeing that Congress's use of the permissive word "may" rather than the mandatory word "shall" indicated Congress's intent to give the BOP "discretion as to when earned FSA time credits would be

credited toward prisoners' early release so long as they do so fully no later than January 15, 2022");

Holt v. Warden, No. 4:20-CV-04064-RAL, 2021 WL 1925503, at *5 (D.S.D. May 13, 2021)

("[T]his Court concludes § 3621(h)(4) makes implementation of the FSA earned time credits

permissible during the two-year phase-in period, not mandatory."); see also Jones v. Hendrix, 2021

WL 2402196, at *3 ("Thus, the Court concludes that § 3621(h)(4) makes implementation of the

FSA earned time credits permissible, not mandatory, during the two-year phase-in period."

(emphasis in original)).

Despite the plain and unambiguous language of 18 U.S.C. § 3621(h)(4), O'Bryan invites

the Court to look to other, select indicia of meaning within the First Step Act, much of which

O'Bryan misstates or conflates. For example, O'Bryan places weight on 18 U.S.C. § 3621(h)(2)

and represents that Congress "directed the Bureau of Prisons to 'phase in' the implementation of

the 'earned time credit' program." Docket 23 at p. 3. But this is not what § 3621(h)(2) says. To be

precise, § 3621(h)(2) reads as follows:

**(2) Phase-in.**--In order to carry out paragraph (1), so that every prisoner has the
opportunity to participate in and complete the type and amount of evidence-based
recidivism reduction programs or productive activities they need, and be reassessed
for recidivism risk as necessary to effectively implement the System, the Bureau of
Prisons shall—

**(A)** provide such evidence-based recidivism reduction programs and
productive activities for all prisoners before the date that is 2 years after the
date on which the Bureau of Prisons completes a risk and needs assessment
for each prisoner under paragraph (1)(A); and

**(B)** develop and validate the risk and needs assessment tool to be used in
the reassessments of risk of recidivism, while prisoners are participating in
and completing evidence-based recidivism reduction programs and
productive activities.

Nothing in § 3621(h)(2) references the application of FSA earned time credits. Rather,

§ 3621(h)(2) refers to the phase-in of EBRR programming and productive activities, as well as the

4

use of the risk and needs assessment tool during the phase-in period to reassess prisoners' risk of recidivism. Of course, Congress could have included language in § 3621(h)(2) so as to expressly mandate the application of FSA earned time credits during the phase-in period, but it did not. See Cohen v. United States, No. 20-CV-10833 (JGK), 2021 WL 1549917, at *3 (S.D.N.Y. Apr. 20, 2021) ("While it is true that the statute requires a phase-in, this misses the point that the statute requires various activities during the phase-in period, but pointedly does not require the BOP to be[gin] to assign ETCs during the phase-in period.")

The Bureau has complied with the requirements set forth in § 3621(h)(2) and rejects the notion that it "has sat on its hands," "defeat[ed] the specific policy objectives that Congress sought to accomplish," or otherwise evaded the spirit of the First Step Act in its implementation of the Risk and Needs Assessment System. Docket 23 at pp. 15, 21. During the statutorily prescribed phase-in period, the Bureau has created and revised the FSA Program Guide; developed and validated the risk and needs assessment tool to be used in reassessing prisoners' risk of recidivism; drafted and published a proposed rule that would codify the Bureau's procedures regarding the processes for earning, awarding, and losing FSA earned time credits, see 85 Fed. Reg. 75268; and drafted and published a Program Statement related to FSA Program Incentives, see "First Step Act Program Incentives," Program Statement 5220.01 (July 14, 2021) (*available at* https://www.bop.gov/policy/progstat/5220.01.pdf). Most significantly, the Bureau has developed, expanded, and provided EBRR programming and productive activities to all eligible prisoners. As O'Bryan aptly notes, "[a] chief objective of the First Step Act is to reduce recidivism." Docket 23 at p. 13. The First Step Act purports to achieve that objective through the implementation of the Risk and Needs Assessment System, which features, at its core, participation in evidence-based

programming and productive activities. Developing those programs and ensuring access thereto has been central to the Bureau's efforts during the phase-in period.

O'Bryan also encourages this Court to infer from 18 U.S.C. § 3621(h)(3) that Congress intended to mandate the priority application of FSA earned time credits during the phase-in period. Docket 23 at pp. 9-10. But this is not what § 3621(h)(3) says. Rather, the statute reads as follows:

> **(3) Priority during phase-in.**--During the 2-year period described in paragraph (2)(A), the priority for such programs and activities shall be accorded based on a prisoner's proximity to release date.

Nothing in § 3621(h)(3) references the priority application of FSA earned time credits. Rather, § 3621(h)(3) refers to program access, not the application of incentives and rewards. Section 3621(h)(3) therefore represents yet another instance where Congress had the opportunity to address the application of FSA earned time credits and mandate priority application during the phase-in period, but chose to remain silent instead. O'Bryan suggests that the inclusion of a statutory subsection in which the BOP is directed to give certain prisoners priority of access to programming during the phase-in period is rendered meaningless if not coupled with the priority application of FSA earned time credits during the same phase-in period. Docket 23 at p. 8. The Bureau, however, can provide priority access to programs without providing priority application of FSA earned time credits. The purpose of § 3621(h)(3) is to ensure that prisoners who are nearing their projected release date are given access to programming through which they can earn FSA time credits but to which they will lose access upon transfer to pre-release custody. By granting priority of access to programming based on a prisoner's proximitaey to release date, the Bureau is effectuating the mandate set forth at § 3621(h)(3).

O'Bryan then suggests that 18 U.S.C. § 3621(h)(3) "cannot be divorced from the parallel provisions in [§] 3632(d)(4)(A) and (C)." Docket 23 at p. 10. But this argument conflates a

prisoner's eligibility to <u>earn</u> FSA time credits with the Bureau's obligation to <u>apply</u> FSA time credits. Section 3621(h)(3) exists in harmony with § 3632(d)(4)(A) and (C) without stretching the rules of statutory interpretation, because the statutes address different aspects of the Risk and Needs Assessment System. Section 3621(h)(3) addresses priority of access to programming; § 3632(d)(4)(A) addresses the rate at which prisoners who successfully complete EBRR programming or productive activities will earn FSA time credits; and § 3632(d)(4)(C) mandates that the BOP apply FSA time credits toward time in prerelease custody or supervised release. If the Court assigns plain meaning to these subsections and recognizes that a prisoner's entitlement to <u>earn</u> FSA time credits during the phase-in period is excplicitly separate from the Bureau's obligation to <u>apply</u> earned time credits, the Court will find that the statutes are not in conflict with one another as O'Bryan suggests.

What is in conflict is O'Bryan's interpretation of 18 U.S.C. § 3621(h)(4), his reliance on select canons of statutory interpretation, and the existence of § 3632(a)(6), which reads as follows:

> **(a) In general.**--Not later than 210 days after the date of enactment of this subchapter, the Attorney General, in consultation with the Independent Review Committee authorized by the First Step Act of 2018, shall develop and release publicly on the Department of Justice website a risk and needs assessment system (referred to in this subchapter as the "System"), which shall be used to—
>
>   …
>
>   **(6)** determine <u>when</u> to provide incentives and rewards for successful participation in evidence-based recidivism reduction programs or productive activities in accordance with subsection (e);
>
>   …

(emphasis added). This portion of the statutory scheme clearly indicates that Congress entrusted the Government with the development of a System that would itself include a determination of when to provide incentives and rewards for successful participation in EBRR programming or productive activities. Accordingly, any insistence that §3621(h)(4) be read as a mandate requiring

the application of FSA earned time credits during the phase-in period runs afoul of "(1) the directive that one statute ought not be read in isolation from others when they are part of the same statutory scheme, but must be harmonized to give effect to each aspect of the scheme; (2) the admonition that no part of a statute should be rendered mere surplusage; and (3) the related canon holding that Congress is presumed to mean what it says and say what it means." Docket 23 at pp. 10-11 (citations omitted).

In sum, the plain language of 18 U.S.C. §3621(h)(4) makes implementation of the FSA earned time credits permissible during the two-year phase-in period, not mandatory. Holt v. Warden, No. 4:20-CV-04064-RAL, 2021 WL 1925503 (D.S.D. May 13, 2021); see also Diaz v. Warden, No. 921CV0738GTSATB, 2021 WL 3032694, at *3 (N.D.N.Y. July 19, 2021) ("[N]othing about the statute 'require[s] the BOP to truncate th[e phase-in] process and begin to award ETCs during that period.'") (citation omitted). Should the Court deem it necessary to look to other indicia of meaning within the statutory scheme, it should also consider the absence of reference to the incentive program in § 3621(h)(2)-(3), the distinction between a prisoner's eligibility to earn time credits versus the Bureau's obligation to apply those credits, and the repeated grant of discretion at § 3632(a)(6). These other indicia of meaning provide further evidence that Congress intended to make implementation of FSA earned time credits permissible during the two-year phase-in period.

    **B.**    **Goodman is inapplicable where the amount of earned time credits is in dispute, and an accurate calculation of O'Bryan's earned time credits does not indicate eligibility for immediate release.**

O'Bryan leans heavily on the decision in Goodman v. Ortiz, No. 20-7582, 2020 WL 5015613 (D.N.J. Aug. 25, 2020), drawing factual parallels between that and the present case, while superficially distinguishing two cases cited by the Government. In actuality, even if Goodman did

not represent an outlier from the approach taken by virtually every other court considering the language of 18 U.S.C. § 3621(h)(4), the facts of the current case render Goodman inapplicable. Key to the decision of the New Jersey court was the fact that the Government did not dispute the number or type of programming credits the inmate was claiming. Goodman, 2020 WL 5015613, at *2. Courts have declined to follow Goodman when BOP disputes the number of programming credits an inmate claims. See, e.g., Prince v. Fikes, Civ. No. 21-643 (MJD/BRT), 2021 WL 2942311, at * 2 (D. Minn. June 16, 2021) (distinguishing Goodman because the petitioner and government were "worlds apart" on the time credits earned by the inmate); Bradley v. Spaulding, Civ. No. 3:20-2294, 2021 WL 1964598, at *2 (M.D. Pa. May 17, 2021) ("Goodman is inapplicable to Petitioner's circumstance because the parties dispute whether Petitioner has successfully completed programs that he would be eligible for additional time credits under the First Step Act. Thus, the issue here is not one only involving statutory construction.").

In the present case, O'Bryan acknowledges that "[t]he Government disputes this claim as to the amount of time credits earned, but it concedes that he has actually earned time credits." Docket 23 at p. 15. O'Bryan broadly claims that he is entitled to 14 months of FSA earned time credits based on his current, and soon to be completed, programming efforts. What is undisputed is that O'Bryan has qualified for the increased time-credit calculations because he has received two consecutive "low" PATTERN risk assessments. See Docket 16 at ¶ 6. It is also undisputed that he has needs in the following categories: Cognitions, Finance/Poverty, Medical, Recreation/Leisure/Fitness, Antisocial Peers, Family/Parenting, Work, and Substance Abuse. Id. at ¶ 7.

What the Government does dispute is the actual calculation of O'Bryan's earned time credits. O'Bryan catalogues the entirety of his programming participation in his habeas petition.

Docket 1 at p. 7. The vast majority of this extensive list of programming is either not recognized by the Bureau's First Step Act Approved Programs Guide or has been applied inappropriately. O'Bryan correctly claims that he completed RDAP. See id. As previously recognized, the successful completion of RDAP fulfills needs in the areas of Cognitions and Substance Abuse and therefore entitles O'Bryan to 500 hours of FSA earned time credits. See First Step Act Approved Programs Guide ("Programs Guide"), at p. 26 (*available at* https://www.bop.gov/inmates/fsa/docs/2021_fsa_program_guide.pdf). O'Bryan also lists a multitude of college courses he has enrolled in, and anticipates the completion of his post-secondary degree in August 2021. See Docket 1 at p. 7. This would satisfy a Work need and entitle O'Bryan to up to another 200 programming hours. See Programs Guide at p. 25. Where O'Bryan errs is in listing work assignments which do not entitle him to FSA earned time credits, and listing each individual college course he has taken as a separate credit-earning activity. O'Bryan's work as an orderly for various units of his institution is not recognized as an EBRR program or productive activity satisfying a Work need. Further, his efforts at obtaining a college degree only vest as a single activity when he successfully completes the degree-earning program.

O'Bryan summarizes his total programming credits by claiming he has accumulated 27 months of programming, resulting in 13.5 months of FSA earned time credits. O'Bryan likely arrived at this number by counting every day he was working as an orderly or taking a college course, as credit for a full day's worth of programming. O'Bryan's second brief in opposition to the motion to dismiss relies on this improper calculation, but had O'Bryan or his counsel ran the calculation, it would be evident that O'Bryan's accrual of FSA earned time credits is far short of the amount of time he claims in the underlying petition.

As set forth in the Declaration of Sasha Labrenz, if O'Bryan successfully completes his degree program in August 2021, and assuming no other changes to O'Bryan's status, he will have completed a total of 700 programming hours. Docket 29 at ¶ 5. One day of program participation equates to eight hours of programming time. Furthermore, as a "low" risk inmate, O'Bryan is entitled to 15 days of credit for every 30 days of programming. The math for calculating FSA earned time credit is as follows:

(# of programming hours/8 hours per day)　　→　(700/8) = 87.5 days earned
(# of earned programming days/30 days) x 15　→　(87.5/30) x 15 = **43.75 days total**

Accordingly, even allowing for the preemptive assignment of FSA earned time credits for O'Bryan's college degree, O'Bryan is only entitled to 43.75 days of earned time credits, not the 14 months he and his attorney claim. This massive discrepancy between the time O'Bryan claims to be owed and the time attributed by the Government is enough to distinguish this case from <u>Goodman</u>, even if this Court finds the logic of the District of New Jersey otherwise persuasive.[1]

---

[1] O'Bryan's cursory attempts to factually distinguish supporting case law are irrelevant. O'Bryan chooses just two cases to distinguish from his own— <u>Hand v. Barr</u>, No. 1:20-CV-00348, 2021 WL 392445, at *5 (E.D. Cal. Feb. 4, 2021) (report and recommendation) and <u>Llewlyn v. Johns</u>, No. 5:20-CV-77, 2021 WL 535863 (S.D. Ga. Jan. 5, 2021). Significantly, the language in <u>Llewlyn</u> upon which O'Bryan relies to distinguish his case constitutes *dicta* and is therefore irrelevant to the court's conclusion that "[b]ecause the First Step Act does not require actual implementation for each inmate until January 2022, Llewlyn is not entitled to an order from this Court compelling the BOP to recalculate his time credits." 2021 WL 535863 at *2. A more factually analogous decision can be found in <u>Prince</u>, 2021 WL 2942311 (D. Minn. June 16, 2021). There, the court considered a habeas petition similar to O'Bryan's in that Prince had asserted he was entitled to 240-390 days of earned time credit. <u>Id</u>. at *2. With a release date of September 19, 2022, Prince was arguably eligible for immediate release upon the application of his earned time credits. <u>Id</u>. at *1. Citing <u>Holt</u>, 2021 WL 1925503 (D.S.D. May 13, 2021), among other similar decisions, the court concluded that "[b]ecause the First Step Act does not mandate actual implementation until January 2022, Prince is not entitled to the relief he seeks." *Id*. at *2.

**C.     In light of O'Bryan's actual earned time credits, his claim remains premature.**

O'Bryan's argument that "the harm that will befall him if the BOP does not apply his earned time credits until January 15, 2022," rests on an inaccurate and wholly unsupported calculation of FSA earned time credits. O'Bryan has presently completed 500 programming hours, which entitles him to 31.25 days of earned time credits under the First Step Act. Docket 16 at ¶ 11. He is presently enrolled in a degree-seeking program, for which he will earn an additional 200 programming hours provided he successfully completes the program and assuming no other changes to his status. Docket 29 at ¶ 5. These additional programming hours would entitle O'Bryan to an additional 12.5 days of earned time credits under the First Step Act, for a total of 43.75 days of FSA earned time credits. With a projected release date of February 23, 2022, O'Bryan still will not have earned enough FSA time credits to create a concrete dispute at this time. His attempt to apply FSA earned time credits is purely hypothetical, and the Court should abstain from addressing the merits of the underlying petition.

**D.     The Administrative Procedures Act divests the Court of jurisdiction to grant O'Bryan the relief he seeks.**

At the heart of O'Bryan's petition is a request that this Court direct the Bureau to immediately apply his earned time credits and release him from custody. It is uncontested, however, that the authority to calculate a sentence based on credits and time served rests with the Bureau of Prisons. See United States v. Wilson, 503 U.S. 329, 335-36 (1992). The provisions of the First Step Act related to the awarding of earned time credits falls within this purview. The Bureau was tasked with designing the "System," and it is the "System" that "shall be used to . . . determine when to provide incentives and rewards for successful participation in evidence-based recidivism reduction programs or product activities" and "when a prisoner is ready to transfer into prerelease custody or supervised release in accordance with section 3624." 18 U.S.C. § 3632(a)(6)-

12

(7). Accordingly, this Court lacks jurisdiction to review, or even compel, the Bureau's discretionary, individualized decisions concerning transfer to pre-release custody or supervised release. See Reeb v. Thomas, 636 F.3d 1224, 1226-28 (9th Cir. 2011) (reviewing BOP's individualized placement decisions would be contrary to the "plain language" of § 3625 exempting such placement decisions from judicial review).

The First Step Act granted authority to the Bureau to award certain prisoners relief for participation in recidivism-reduction programming. 18 U.S.C. § 3632(d). It has been established that "any relief granted by this provision of the [First Step] Act is within the sole jurisdiction of the Bureau of Prisons." Wright v. United States, No. 3:17-CR-68-02, 2019 WL 2341663, at *3 (E.D. Tenn. June 3, 2019). Determinations related to a prisoner's eligibility for accruing earned time credits, which programs or activities qualify for earned time credits, and what impact these credits have on a prisoner's sentence length are all vested within the authority of the Attorney General. 18 U.S.C. § 3632; see also United States v. Wilson, 503 U.S. 329, 335-36 (1992). In accordance with 18 U.S.C. § 3632(d)(4)(C), the benefit for eligible prisoners who have successfully completed EBRR programs or productive activities and have earned time credits as a result is the application of earned time credits toward time in pre-release custody or supervised release. Custody placement determinations are found under the Bureau's authority in 18 U.S.C. § 3621, and, as such, are not reviewable by any court. In fact, 18 U.S.C. § 3621(b)(5) specifically states "[n]otwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court."

To date, the Bureau has not exercised its discretion to apply O'Bryan's earned time credits to pre-release custody or supervised release, and the First Step Act does not compel the Bureau to do so prior to January 15, 2022. Instead, the First Step Act "provided for a gradual development

13

of the framework of evaluating and programming pursuant to which various incentives, including time credits, could be earned." Cohen v. United States, 2021 WL 1549917, at *2; see also Rominger v. Spaulding, No. 1:21-CV-00943, 2021 WL 2894760, at *1 (M.D. Pa. July 9, 2021) ("BOP is still formulating guidance for the calculation and application of credits, particularly with respect to programs that have no completion date, such as employment with UNICOR."). Congress further directed the Attorney General, in consultation with the Assistant Director of the Office of Probation and Pretrial Services, to provide guidelines to the Bureau related to the use of the time credit incentive. See 18 U.S.C. § 3624(g)(6). This guidance has not yet been provided, and the Court should decline to interfere with agency policy by interpreting 18 U.S.C. § 3621(h)(4) as imposing a duty upon the Bureau to apply earned time credits prior to the issuance of formal agency guidance. After such guidance is issued, the Bureau will make a determination regarding the application of O'Bryan's FSA earned time credits. Until such time, O'Bryan's challenge rests on a hypothetical determination that is committed to the discretion of the Bureau. The claim should therefore be dismissed.

## II.     O'Bryan Has Failed to State a Claim for Which Relief May Be Granted.

Again, whether O'Bryan has a constitutional right to earn time credits is not at issue in the underlying petition. Rather, the issue is whether he can apply time credits to advance his release date from custody. Because § 3624(g) affords the Bureau discretion to either place him into a prerelease placement (either on home confinement or at a residential reentry center) or onto supervised release, he does not have a constitutional right to "apply" his FSA earned time credits in a specific manner. Because O'Bryan does not have a constitutional right to the application of FSA earned time credits to gain an early release, he has failed to allege that his current confinement

14

is unlawful. The Court should therefore dismiss the underlying petition for failure to state a claim upon which relief may be granted.

## CONCLUSION

Respondent respectfully renews its request that the Court dismiss the underlying § 2241 petition for lack of subject matter jurisdiction, or alternatively, for failure to state a claim upon which relief may be granted.

Dated this 4th day of August, 2021.

> DENNIS R. HOLMES
> Acting United States Attorney
>
> */s/ Alison J. Ramsdell*
> Alison J. Ramsdell
> Assistant United States Attorney
> P.O. Box 2638
> Sioux Falls, SD 57101-2638
> (605) 330-4400
> Alison.Ramsdell@usdoj.gov